George L. Sogg v. Commissioner.
Sogg v. Commissioner
Docket No. 23112.
United States Tax Court
1950 Tax Ct. Memo LEXIS 84; 9 T.C.M. (CCH) 927; T.C.M. (RIA) 50251; October 4, 1950
Theodore W. Kearins, C.P.A., and Dale W. Black, C.P.A., for the petitioner. Thomas V. Lefevere, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined that there is a deficiency in income and victory tax for the year 1943 in the amount of $6,132.28. The year 1942 is involved under the provisions of the Current Tax Payment Act. In determining the petitioner's taxable net income for 1942, the respondent has made two determinations both of which are contested by the petitioner. He has disallowed the carry-over from 1941 of a loss in the amount of $4,614.90 which the petitioner reported in his return for 1941. That loss resulted from a deduction for an alleged partially worthless debt of a corporation known as Federal Wrecking Company of Boston, *85 in the amount of $18,072.71, which deduction was allowed by the respondent. The year 1941 is not before us. But the same indebtedness is now put in issue in this proceeding under the second determination of the respondent which was to disallow deduction of the balance of the alleged indebtedness in the amount of $6,864.45, which the petitioner deducted in 1942 as a bad debt. The respondent's position with respect to an alleged debt of Federal Wrecking Company to the petitioner now is that out of the sums which petitioner advanced to the corporation, in which he owned one-half of the stock, $6,864.45 constituted a contribution to capital rather than a loan. The Federal Wrecking Company was dissolved in 1943, which year is involved. The respondent has given petitioner a capital loss deduction in 1943 in the amount of one-half of what the respondent has determined was petitioner's contribution to the capital of Federal Wrecking Company. The pleadings do not present any question of estoppel, and petitioner makes no contentions on brief with respect to estoppel. The foregoing is set forth in explanation of the way in which the issues for decision have arisen. The petitioner filed *86 his returns with the collector for the eighteenth district of Ohio, at Cleveland. Findings of Fact The petitioner resides in Cleveland, Ohio. Since 1910 he has engaged in directly or been associated with corporations or partnerships engaged in the business of wrecking buildings and selling the salvaged materials. These business organizations have been located in Ohio, Maryland, New York, Michigan, Pennsylvaia, Massachusetts, and elsewhere. There were about twelve corporations in which the petitioner owned stock, and there were other unincorporated businesses with which the petitioner was associated. During 1942 the petitioner did not receive income from business organizations in which he had interests excepting as is set forth hereinafter. In 1939 the petitioner owned stock in Cuyahoga Material Corporation which had its office in Cleveland. He was president of the corporation in 1941, 1942, and 1943. He controlled that corporation through stock ownership in himself or members of his family. He received a salary from this corporation in 1941, 1942, and 1943 in the respective amounts of $3,000, $3,900, and $5,200. In 1939 and through 1941, the petitioner conducted a business *87 in Cleveland as a sole proprietor under the name of Cuyahoga Wrecking Company. The business was wrecking and the sale of salvaged materials. In 1942 and 1943 this business was conducted under a partnership under the same name. In 1939 the Boston Housing Authority invited bids for the demolition of about 800 buildings in Boston. Petitioner submitted a bid signed "George L. Sogg, Cuyahoga Wrecking Company," and he was the successful bidder. On or about June 30, 1939, he entered into an agreement with the Boston Housing Authority to demolish buildings and houses in a slum clearance project under which the Housing Authority agreed to pay the total amount of $66,666, payable in certain percentages as the demolition work progressed, and petitioner was to have the salvage from the sale of certain materials. Thereafter, the petitioner asked Leon A. Harris, who was in the wrecking business, to join with him in the work under the contract on the basis of sharing profits and loss fifty-fifty. Harris was associated with Harris Wrecking Company, an Ohio corporation. Harris accepted the offer, but it was decided that a corporation should be organized, and that Harris Wrecking Company and the petitioner *88 would subscribe to the stock of the corporation in equal amounts. Accordingly, the corporation, Federal Wrecking Company, was organized under the laws of Massachusetts, and petitioner became its president, and Harris became its secretary, and petitioner and Harris Wrecking Company, each, subscribed to $500 of capital stock so that a total of $1,000 was the paid-in capital. Shortly after Federal was organized, petitioner and Harris arranged with a bank, Manufacturers Trading Corporation of Delaware, for loans from the bank to Federal up to $25,000 to meet current expenses of the wrecking work under the contract with the Boston Housing Authority. Federal was a party to the loan agreement. Manufacturers made loans which aggregated $51,000. It was anticipated in 1939 when the contract was obtained from the Boston Housing Authority that the sales of salvaged materials would provide funds to meet the current expenses of the wrecking work, and, also, that a profit would be made under the contract from the sales of salvaged materials. The venture turned out to be unprofitable because the market for salvaged materials went down. Sales were slow and prices were lower than had been expected. *89 Part of the indebtedness to Manufacturers was paid with proceeds from sales, and petitioner and Harris paid part of the debt. Petitioner paid Manufacturers $3,500 in 1940, and $3,192.24 in 1941. An account was set up in petitioner's books with Federal in 1939. The abovementioned payments to Manufacturers were entered in the account as "debits" or amounts owing by Federal to petitioner. At the end of 1939, the total of payments by petitioner of various items charged to Federal in the account was $9,963.24. Included in the total of the payments were cash, $6,000. The account was credited with $1,750, leaving a balance at the end of the year of $8,213.24. During 1940 the net charges to this account amounted to $6,791.46, and the balance owing by Federal totalled $15,004.70. During 1941 there were additional net charges entered in the account in the amount of $3,658.38. To this was added $7,155.08 which petitioner paid to Harris Wrecking Company to equalize his advances to Federal with those of Harris, and then the total owing by Federal to petitioner was, according to the account, $25,818.16. The charges entered in the account in 1940 and 1941 were for expenses of Federal which petitioner *90 paid, including some payments on Federal's debt to Manufacturers. Harris Wrecking Company, with which Leon Harris was associated, also made advances to Federal, either directly or through payments of bills of Federal, and these payments were recorded in an account on the books of Harris Wrecking Company with Federal. At the end of 1941, the net amount owing by Federal to Harris Wrecking Company, according to the account, was $32,973.24. At the end of 1941, petitioner and Harris Wrecking Company determined that 70 per cent of the "indebtedness" of Federal, as shown by these accounts, should be charged off as uncollectible, and petitioner charged off $18,072.71, leaving a balance of $7,745.45 as the sum owed to him by Federal. Harris Wrecking Company made a similar charge-off. The petitioner, in his 1941 income tax return, deducted $18,072.71 as a loss from a partially worthless debt. The respondent allowed the deduction, and as a result, petitioner's return for 1941 showed a loss of $4,614.90. At the beginning of 1942, petitioner's account with Federal showed a debit balance of $7,745.45. During 1942 petitioner paid a total of $800 of Federal's expenses. After credits to the *91 account during 1942, the balance at the end of 1942 was $7,364.45, owing by Federal to petitioner. Included in this amount was $500, the contribution of petitioner to the capital of Federal. Petitioner charged off the balance at the end of 1942. In his return for 1942 he deducted as a bad debt the amount of $6,864.45. This amount was the difference between petitioner's capital contribution of $500 and the aforesaid balance of the account. Respondent disallowed the deduction. Harris Wrecking Company made a similar charge-off of the balance of Federal's account with it at the end of 1942, and took a bad debt deduction in its return. No note or other evidence of indebtedness was given by Federal to petitioner or Harris Wrecking Company for funds advanced, nor was interest charged or paid therefor. Federal was not indebted to petitioner at the end of 1942 for $6,864.45. Petitioner contributed that amount, at least, to the capital of Federal in addition to the $500 he paid for stock of Federal. The books of Federal showed, as of the end of 1942, assets of $12,265.06. The liabilities were loans payable to petitioner and Harris Wrecking Company of $25,437.16 each, loans payable to *92 others amounting to $4,976.41, common stock, $1,000, and accrued interest and taxes, $143.21. In his income tax return for 1941, the petitioner reported income as follows: Salary from Cuyahoga Material Corporation, $3,000; and profits from the partnership doing business as Cuyahoga Wrecking Company, in the amount of $10,728.81, total $13,728.81. No other income for 1941 was reported. No income from Federal Wrecking Company was reported. In his return for 1941, exclusive of the bad debt deduction of $18,072.71 deducted as the partially worthless debt of Federal, petitioner deducted $245 for other bad debts, and $26 for contributions, or a total of $271. Including the bad debt of $18,072.71, petitioner's total deductions for 1941 were $18,343.71. A loss of $4,614.90 was reported in the 1941 return. In his return for 1942, the petitioner deducted $4,614.90 as a net operating loss carry-over from 1941. The respondent disallowed the deduction. On his income tax return for 1943 petitioner reported as other income bad debt recoveries, $2,417.16 received on account of Federal as a result of a refund from the Massachusetts Employment Commission. The respondent eliminated $2,417.16 from *93 income for 1943. He determined that petitioner's capital contributed to Federal was $6,864.45, from which he subtracted $2,417.16 as a capital recovery, which left a net balance of $4,447.29 as a contribution to Federal's capital. The respondent allowed petitioner a capital loss deduction of one-half of the above (50 per cent) in 1943, or $2,223.64. Federal was dissolved in 1943. During 1941 a business which was regularly carried on by petitioner was the partnership doing business under the name of Cuyahoga Wrecking Company of Cleveland. During 1941 the petitioner was an officer-employee of the corporation, Cuyahoga Material Corporation of Cleveland, and for his services to this corporation he received a salary of $3,000 for the year. The petitioner's employment in this corporation constituted a trade regularly carried on by the petitioner during 1941. The petitioner received no other income in 1941 than his share of the profits of the partnership and his salary from the corporation. The Federal Wrecking Company of Boston was a separate entity, having its own business. It was not the alter ego of the petitioner and the business of Federal did not constitute a business regularly *94 carried on by petitioner. The petitioner was not engaged in the business of loaning money. The loss which the petitioner sustained in 1941 in the amount of $18,072.71 upon charging off a worthless indebtedness of Federal Wrecking Company in 1941 was not a loss sustained in the operation of the business regularly carried on by the petitioner, and it was not attributable to the operation of the business regularly carried on by him. Opinion Issue 1. The alleged bad debt loss of $6,864.45. The question is whether Federal owed petitioner $6,864.45 at the end of 1942. The respondent has determined that there was no indebtedness of that amount, and that amounts aggregating that sum constituted contributions of capital to Federal by petitioner. The evidence shows that the petitioner advanced to Federal much more than $6,864.45 between 1939 and 1942, in excess of $25,000. The petitioner has received a deduction of $18,072.71 as a worthless debt of Federal. That deduction was allowed in 1941. A stockholder can make loans to a corporation in which he owns stock, albeit there must be evidence that there were loans. The effect of the respondent's determinations with respect to petitioner's *95 advances to Federal is that the respondent has recognized part of the advances as loans and part as capital contribution. At least, since 1941 is a closed year, that is the practical result of all of the determinations. The question involves, therefore, consideration of whether, in the light of the above, the respondent's determination in 1942, holding that $6,864.45 of the advances did not constitute a loan to Federal is correct. Upon consideration of all of the evidence, it is concluded that the determination is proper, and it has been found as a fact that Federal was not indebted, at the end of 1942, to petitioner for $6,864.45. Federal was organized with a small amount of capital - $1,000 - of which petitioner contributed $500. That amount of capital was inadequate for Federal's operations. Both stockholders made equal amounts of advances to Federal, and therefore, their advances were in proportion to their original capital contributions. That circumstance invites scrutiny of the true nature of the advances by stockholders to a corporation. . Also, there was no evidence of a loan, such as a note. ; *96 ; and , affirming . We have recently considered the same question as is presented here in , (promulgated July 27, 1950), in which we have discussed the leading authorities which control the question. The question presented comes squarely under the holding of the Dobkin case, and , aff'd, ; . Federal was inadequately capitalized. The ratio of its paid-in capital of $1,000 to its debt to Manufacturers Trading Corporation was about 50 to 1. In , aff'd, , we held that debenture preferred stock represented a capital investment where the ratio of debt to capital would be 29 to 1 if the debenture stock were treated as a debt. See, also, . The respondent's determination is in accord with an abundance of authority. We sustain his determination. The petitioner relies upon , *97 but that case is clearly not in point. In it, the parties were agreed that a debt was owing to the petitioner. That is not conceded here. The question was whether the debt was a business or a non-business debt under section 23 (k) (4). Our conclusion in the Campbell case is not in conflict with the holdings or the reasoning in the Dobkin and Janeway and similar cases. Furthermore, the question here arises under section 23 (k) (1). Issue 2. The carry-over of loss from 1941 to 1942. The petitioner reported a loss of $4,614.90 in his return for 1941. He contends that this loss was a "net operating loss" within the definition of net operating loss set forth in section 122 of the Code, and that, therefore, he is entitled to carry over to 1942 and deduct from his 1942 income the amount of $4,614.90 under section 23 (s). Section 23 (s) allows deduction of a "net operating loss" computed under section 122, and that computation is made by finding the amount of the excess of deductions over gross income "with the exceptions, additions and limitations provided in subsection (d)." The respondent contends that the exceptions and limitations imposed by subsection (d) (5) of section 122 *98 leave the petitioner without any "net operating loss" for 1941 to carry over to 1942. He asserts that this results from the fact that the deduction allowed in 1941 for a bad debt loss in the amount of $18,072.71, being the debt of Federal Wrecking Company, was not attributable to the operation of a business regularly carried on by the petitioner, and from the fact that the petitioner did not have gross income from sources outside of the business which he regularly carried on to offset against either $18,072.71, or the total of all of the deductions allowed in 1941 totalling $18,343.71. The provisions of subsection (d) (5) of section 122 are set forth in the margin. [1]
The respondent has set forth the controlling decisions on the questions of law under this issue on brief. *99 He relies upon the following: , pet. for review dismissed, ; ; , aff'd, ; , and the leading cases; ; and . The petitioner cites no authority which would support a holding by this Court that this issue in this proceeding falls outside of the rationale and holdings of the authorities upon which the respondent relies. The petitioner relies upon In that proceeding there was no issue involving a claim for a net operating loss deduction. It is not in point. The petitioner relies, also, upon , which has been considered but which is distinguishable on the facts from this proceeding. Upon consideration of all of the evidence it has been found as a fact that the petitioner was not engaged in the business of loaning money. A loss from a worthless debt was not therefore a *100 loss which was attributable to the business which the petitioner regularly carried on. It has been found as a fact that the business regularly carried on by petitioner in 1941 was his partnership business, Cuyahoga Wrecking Company in Cleveland, and that he regularly carried on a trade as an employee of Cuyahoga Material Corporation. These findings of fact which have been made from all of the evidence are in accord with the standard which is set forth in , and , which has been applied frequently and, in particular, in the cases upon which the respondent relies, which are set forth above. The petitioner elected to create a corporation in 1939 to do the work under the Boston Housing Authority contract - Federal Wrecking Company of Boston. He assigned the contract to Federal. Federal was a separate entity. It was neither wholly owned by petitioner nor was it his alter ego. It is not sufficient that the business of Federal was similar to the business of Cuyahoga Wrecking Company. See ; and The corporation took over business which petitioner *101 might have done himself, but that having been done, the Boston business was that of Federal, and petitioner's relation to Federal was that of a stockholder and officer. His loans to Federal were an incident of his relation to Federal as a stockholder and part owner. But since petitioner's regular business was not that of loaning money, loss from loans to Federal cannot be held to constitute loss attributable to the regular trade or business of petitioner. There remains the question whether the limitations provisions of subsection (d) (5) of section 122 leave some part of the excess of petitioner's 1941 deductions over gross income within the definition of "net operating loss." Respondent contends that the petitioner had no "net operating loss" in 1941. He bases this contention upon the assertion that the petitioner "did not have other income in 1941," i.e., "non-business income not derived from such trade or business [regularly carried on business]" within subsection (d) (5). Respondent's contention is correct. Petitioner had no other income in 1941, i.e., "non-business income" outside of what he received from the trade and business regularly conducted by him. Therefore (d) of *102 subsection (5) cannot be applied here so as to allow petitioner any amount as a net operating loss deduction. The petitioner's claims under this issue must be denied. Consideration has been given to some evidence relating to petitioner's association with about twelve corporations. The evidence indicates that the association existed before 1941. Also, this evidence is extremely limited. It appears that the petitioner and his family owned stock in all of these corporations. From the limited evidence on this point we have been unable to find that the petitioner was regularly engaged in the business of loaning money. Decision will be entered for the respondent. Footnotes
1. SEC. 122. NET OPERATING LOSS DEDUCTION. * * *
(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS. * * * (5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. * * *↩